**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 16-62370-CIV-DIMITROULEAS

DANIEL J. DOCZY,

                    Plaintiff,                                Magistrate Judge Snow

    v.

VERIFONE SYSTEMS, INC. and VERIFONE, INC.,

                    Defendants.                  /

---

**<u>DEFENDANT VERIFONE SYSTEMS, INC.'S AND DEFENDANT VERIFONE, INC.'S
AMENDED MOTION FOR SUMMARY JUDGEMENT OF NON-INFRINGEMENT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND ............................................................................................................. 1

       A.     The Asserted Patent ............................................................................................ 1

       B.     The Accused Products.......................................................................................... 6

       C.     Interaction Between the Parties ......................................................................... 9

III.   ARGUMENT .................................................................................................................. 10

       A.     Legal Standard .................................................................................................... 10

       B.     The Accused Products Do Not Literally Infringe ................................................ 13

       C.     The Accused Products Do Not Infringe under the Doctrine of Equivalents......... 14

IV.    CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

*Cases*

*Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*, 580 F.3d 1340 (Fed. Cir. 2009) .............................. 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 10

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831 (Fed. Cir. 1984).... 10

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249 (Fed. Cir. 2010)........ 12

*Celotex Corporation v. Catrett*, 477 U.S. 317 (1986) .......................................... 10, 11

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349 (Fed. Cir. 2006) ............................. 15

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314 (Fed. Cir.
    2003) .......................................................................................... 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ..................... 13, 15

*Flexiteek Americas, Inc. v. Plasteak, Inc.*, No. 12-60215-CIV, 2013 WL 6233175 (S.D. Fla. Dec.
    2, 2013), aff'd, 603 F. App'x 994 (Fed. Cir. 2015)................................................ 11

*Freedman Seating Co. v. American Seating Co. v. American Seating Co.*, 420 F.3d 1350 (Fed.
    Cir. 2005) ...................................................................................... 13

*Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350 (Fed. Cir. 1999)................................... 12

*Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942 (Fed. Cir. 2016) ............................... 11

*Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351 (Fed. Cir. 2012) ........................... 13

*Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420 (Fed. Cir. 1997)........................ 14

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995)................................. 12

*Voda v. Cordis Corp.*, 536 F.3d 1311 (2008) ....................................................... 13, 15

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). .............................. 12, 16

***Statutes***

Fed. R. Civ. P. 56(c) ............................................................................................... 10

## I.      INTRODUCTION

Plaintiff, Daniel J. Doczy ("Doczy"), ignores the indisputable fact that Defendants VeriFone Systems, Inc. and VeriFone, Inc. (collectively "Verifone") unequivocally do not infringe the sole asserted patent, U.S. Patent No. 8,077,453 ("'453 patent"). On multiple occasions, Verifone has asked Doczy to explain how Verifone could possibly infringe the '453 patent given that the patent is directed to technology that is fundamentally different from Verifone's offerings. Doczy has failed to respond – because there is simply no infringement here.

The differences between the '453 patent and the accused Verifone products are stark and incontrovertible. The '453 patent is directed to a protective housing for mobile communication devices that includes an "interchangeably mounted" sensor and a "replaceable" cradle connector. A cursory review of public information about the accused Verifone products (the e315 and e355 mobile payment terminals) reflects that such products do not have these required features. Indeed, both accused products have integrated sensors that are not interchangeable, and both have integrated connectors that are not replaceable as contemplated by the asserted patent.

Summary judgment of non-infringement is appropriate now.

## II.      BACKGROUND

### A.      The Asserted Patent

The '453 patent, titled "Modular Protective Housing with Peripherals for a Handheld Communication Device," is directed to a "peripheral device" for use with a handheld communication device such as a PDA or mobile phone. Undisputed Material Fact ("UMF") 1; Declaration of Ryan Marton ("Marton Decl."), Ex. A ('453 patent) at Abstract. As described in the specification and reflected in figure 2, reproduced here, this "peripheral device" is a "modular case" for holding a



FIG. 2

mobile communications device. *Id.* at 3:44-49. The patent explains that this case "serves two purposes: it protects the PDA from damage resulting from drops, spills, etc. and 2) it increases the functionality of the PDA with the addition of multi-function peripheral processing." *Id.* at 3:46-49. The patent further explains that there is a need for enhancing the functionality of the mobile communications devices of the time, and highlights that these devices "fall short when there is a need for collecting and disseminating data such as barcodes, fingerprints, etc." *Id.* at 1:50-55.

The claims are directed to solving this data-collection problem. In particular, each and every claim of the '453 is directed to a "sensor clip" (claims 1-7) or peripheral device with a "sensor clip" (claims 8-19) with an "interchangeably mounted" sensor.  UMF 2-3; '453 patent. Claims 1 and 8, reproduced below, are representative.

2

**1.** A sensor clip for use with a handheld communication device, the sensor clip comprising:

a housing;

at least one sensor unit for receiving information, the sensor unit interchangeably mounted in the housing;

a replaceable cradle connector configured to accept one or more I/O devices configured to connect with the same cradle connector; and

an interface between the sensor unit and the handheld communication device configured to provide a communication link between the sensor unit and the handheld communication device.

**8.** A peripheral device for portable use with a handheld communication device, the peripheral device comprising:

a sensor clip, the sensor clip including

a housing;

at least one sensor unit for receiving information, the sensor unit interchangeably mounted in the housing; and

an interface between the sensor unit and the handheld communication device configured to provide a communication link between the sensor unit and the handheld communication device;

a processor, coupled to the sensor unit, for processing the information;

circuitry, coupled to the processor, configured to provide one or more functions complementary to the handheld communication device;

a replaceable cradle connector configured to accept one or more I/O devices configured to connect with the same cradle connector; and

a power supply circuit for portably powering the peripheral device.

*Id.* at 11:2-13 (claim 1) (emphasis added), 11:30-50 (claim 8) (emphasis added). Though the

specification does not use the term "interchangeable," it does explain that the sensor "can be

***removed or added as necessary*** to address different sensor requirements." *Id.* at 6:31-32

(emphasis added). A variety of different sensors are contemplated, such as "an image reader,

barcode reader, credit card reader, fingerprint reader, and the like." *Id.* at 6:65-7:1. The patent

explains: "all of these features can be ***added or removed*** and updated by using a module that has

the same form factor regardless of what functionality it provides." *Id.* at 7:1-7:4 (emphasis

3

added). Because the various modules / sensors have the same form factor, they can be swapped in and out by the user depending on need.

This "interchangeably mounted" requirement was added during prosecution to overcome prior art that utilized integrated sensors. The originally filed independent claims did not recite an "interchangeable" sensor. Rather, the original independent claims merely required an "input for receiving information." Originally filed claim 1, reproduced below, is representative.

> 1.  A ruggedized, portable, modular housing for a handheld communication device, the ruggedized, portable, modular housing comprising:
>
>> an input for receiving information; a processor for processing the information;
>>
>> circuitry, coupled to the processor, for providing a plurality of functions complementary to the handheld communication device; and
>>
>> an interface between the processor and the handheld communication device for providing a communication link with the handheld communication device.

Marton Decl., Ex. B (Claims from Application Filed February 12, 2010).

During prosecution, the examiner rejected the originally filed independent claims based on U.S. Patent No. 5,859,628 ("Ross"). UMF 4; Marton Decl., Ex. C (September 20, 2010 Office Action). Ross disclosed a housing into which a PDA is inserted. UMF 4; Marton Decl., Ex. D (Ross) at 4:19-65. Ross disclosed that this housing had an integrated sensor, but the examiner conceded that it did not disclose an "interchangeable sensor." UMF 5; Marton Decl., Ex. C (September 20, 2010 Office Action) at p. 10 ("Ross is silent as to wherein the input (102) comprises an interchangeable sensor clip that houses one of a plurality of interchangeable sensor devices."). In responding to the September 20, 2010 Office Action, the applicant cancelled the originally filed claims and added new claims, each requiring an interchangeably mounted sensor. UMF 6; Marton Decl. Ex. E (February 22, 2011 Applicant Response) at pp. 2-5.

In a final office action dated May 12, 2011, the examiner explained that U.S. Patent No. 6,003,775 ("Ackley") discloses a housing with a sensor that is interchangeably mounted in the housing. UMF 7; Marton Decl., Ex. F (May 12, 2011 Office Action) at pp. 11-12.; Ex. G (Ackley). The Examiner relied on Ackley's sensor module 50 having "a standard size and electrical connection" to allow the sensor to "be easily **detached** from the scanner 10 **and replaced** with another sensor module having different optical or performance characteristics." UMF 8; May 12, 2011 Office Action at pp. 11-12.; Ackley at 6:26-30. Ackley Fig. 5 (below) depicts the swappable sensor module 50.



As shown, the sensor module 50 can be inserted and removed from the scanner 10 given its "standard size and electronical connection" (*i.e.*, form factor). *Id.; see also, id.* at Abstract ("A scanning apparatus comprises a scanner body portion having an internal receptable with a scan head portion thereof. …A removable optical module is adapted to engage the receptacle[.]").

In responding to the May 12, 2011 office action, the applicant did not argue that Ackley's sensor was not interchangeable.  UMF 9; Marton Decl.; Ex. H (August 11, 2011 Applicant Response) at pp. 2-5. Instead, the applicant added an additional limitation. *Id.* Specifically, the

applicant amended each of the independent claims to recite the "replaceable cradle connector." *Id.* This "replaceable cradle connector" is "designed to allow various styles of [input/output] connectors to be used in the same cradle location." '453 patent, 7:54-67. The specification also explains that a "replaceable cradle connector" may be included to improve the "durability and maintainability" of a device when used "in conditions which may 'wear out' normal connectors faster than usual." '453 patent at 7:55-59.

Only after the requirement of an "interchangeably mounted" sensor and a "replaceable cradle connector" were added to all its claims was the '453 patent allowed.

### B.     The Accused Products

Doczy accuses Verifone's e315 and e355 products. UMF 10; Complaint at ¶ 13; *see also* Marton Decl. Ex. I (April 18, 2016 letter from counsel for Doczy to Verifone Systems, Inc.). The e315 and e355 products are used by merchants to accept various forms of payment. The drawings below illustrate the front and back of the e315 and e355.



*e315 Front View*                              *e315 Back View*



*e355 Front View*          *e355 Back View*

Declaration of Gerald Hamrock ("Hamrock Decl."), Ex. M (e315 Installation Guide) at pp. 14-15; Ex. N (e355 Installation Guide) at pp. 13, 15. As can be seen in the drawings above, the e315 and e355 incorporate a variety of inputs (e.g., a magnetic stripe reader, a 2D imager, a keypad, a display, etc.).

Doczy has alleged that the "interchangeably mounted" sensor limitation is satisfied by the sensors incorporated into the e315 and the e355 – "[1] an integrated barcode scanner with 1D/2D barcode imager, [2] mag-stripe reader, and [3] EMV and/or [4] NFC Payment readers." UMF 11; Marton Decl. Ex. J (Ex. C to April 18, 2016 letter from Doczy's counsel).

However, much like the cited prior art (Ross) which the applicants distinguished with this limitation, the e315 and e355 products have sensors that are integrated into the devices; they are not interchangeably mounted. Hamrock Decl. ¶¶ 5,7. An inspection of the devices reveals each of the sensors are not in any way interchangeable. As can be seen in the below photographs, the e355's smart card reader is integrated into the bottom of the e355, the barcode reader is integrated into the top right of the e355, and the magnetic stripe reader is integrated into the top of the e355.



*See* Hamrock Decl., Ex. O (e355 Photographs). The contactless/NFC reader is not shown because, as its name suggests, it does not require a physical connection to a form of payment and thus is integrated *internal* to the e355. Hamrock Decl. ¶ 9. The e315 sensors are similarly integrated. *Id.* None of these sensors can be removed by the user and swapped out for another sensor. They are built-in; not interchangeably mounted. Indeed, the installation guides for these products expressly describe the bar code and NFC payment readers as "integrated." Ex. M (e315 Installation Guide) at p. 7 ("Some of the e315's key features include: … integrated 2D barcode scanner, …, integrated contactless and NFC-ready…"); Ex. N (e355 Installation Guide) at p. 9 ("Some of the e355's key features include: … integrated 2D barcode scanner, …, integrated contactless and NFC-ready…").

Similarly, as shown in the figures above and throughout the user guides, the e315 and e355 products do not have replaceable cradle connectors that can accept one or more I/O devices. UMF 13; Hamrock Decl. ¶¶ 6, 8. None of the connectors on the e315 or the e355 can be replaced or switched when worn out. *Id.* As highlighted in the below figures, the e315 includes a lightning connector, a micro-USB port, contacts for a micromodule-size security access module ("MSAM"), and gang charger contacts; and the e355 includes a docking connector, a micro-USB port, and contacts for a MSAM.



e315 Connectors (Front); Hamrock Decl., ¶ 6.

E315 Connectors (Back); *Id.*

e355 Connectors (Front); *Id.* at ¶ 8.

e355 Connectors (Back); *Id.*

In his infringement charts purporting to map claim 8 of the '453 patent to the accused Verifone devices, Doczy merely stated that "[t]he Verifone e315 and e355 have a cradle connector that can accept at least one input/output device." Ex. C to April 18, 2016 letter from Doczy's counsel. Doczy did not identify a specific connector or aspect of either device as corresponding to the "replaceable cradle connector" of the claims.

### C.   Interaction Between the Parties

As noted above, on April 18, 2016, Doczy sent Verifone a letter accusing it of infringing the '453 patent. It purported to map claim 8 of the patent to the e315 and e355 products. Marton

Decl., Ex. I. It did not identify "interchangeably mounted" sensors or "replaceable" cradle connectors in either product. *Id.*

After Doczy filed this lawsuit, Verifone sent a letter to Doczy explaining that the accused Verifone products did not include "interchangeably mounted" sensors or "replaceable" cradle connectors. Marton Decl., Ex. K (November 15, 2016 letter from counsel for Verifone to counsel for Doczy). Verifone requested that Doczy dismiss his lawsuit or explain why he thought he had a basis to assert infringement. *Id.* Doczy never responded with any refutation of these undisputed facts or any attempt to explain why his infringement claims should not thus be abandoned. *Id.* Then, on February 28, 2017, Verifone sent a follow up letter to Doczy, again explaining that Verifone does not infringe the asserted patent and asking for dismissal of the suit. *Id.,* Ex. L (February 28, 2017 letter from counsel for Verifone to counsel for Doczy). Verifone also explained that it would be filing this motion and seeking recovery of its attorney's fees given the baselessness of Doczy's case. *Id.* Again, Doczy never responded to that letter. *Id.*

## III.   ARGUMENT

### A.   Legal Standard

A court should grant summary judgment if, drawing all factual inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Facts are considered to be genuinely disputed only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. When the moving party does not have the burden of proof, the non-movant must come forth with admissible evidence that creates a genuine issue of fact for the jury. *Id.* at 248-249. Furthermore, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).

"Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). In the patent context, "a grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016); *Flexiteek Americas, Inc. v. Plasteak, Inc.*, No. 12-60215-CIV, 2013 WL 6233175, at *3 (S.D. Fla. Dec. 2, 2013), aff'd, 603 F. App'x 994 (Fed. Cir. 2015) ("the Court must conclude that even when all reasonable factual inferences are resolved in [Plaintiff's] favor, no reasonable juror could find that any of the accused devices have the [] limitation and therefore must grant summary judgment on infringement to Defendants."). Thus, to succeed on summary judgment of non-infringement, Verifone need establish only that there is no material fact that at least one claim limitation is absent from the accused products.

As the patentee, Doczy bears the burden of demonstrating that the accused devices meet each claim limitation. *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003). In this context, Doczy must come forward with evidence sufficient to establish that there is an issue of material fact as to infringement. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1359 (Fed. Cir. 1999) ("This burden means GE had to present evidence that every limitation of the '659 patent … is met, at least under the doctrine of equivalents, by the alleged Nintendo systems.").

11

Doczy alleges both literal infringement and infringement under the doctrine of equivalents in this case. Complaint, ¶ 13. To establish literal infringement, "every limitation set forth in a claim [must be] found in an accused product, exactly." *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1253 (Fed. Cir. 2010) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)). Thus, "[i]f any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Becton, Dickinson*, 616 F.3d at 1253 (quoting *Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*, 580 F.3d 1340, 1374 (Fed. Cir. 2009)).

Infringement under the doctrine of equivalents exists only where there is no literal infringement and "there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). To establish infringement under the doctrine of equivalents, Doczy must show either that any difference between a given limitation in the asserted claim and the corresponding element in the accused device could be found to be insubstantial or that a factfinder could find that the element in the accused device "performs substantially the same function in substantially the same way to obtain substantially the same result'" as the claim limitation. *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012) (quoting *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (2008)).

Ultimately, the Court should exercise great caution when considering infringement under the doctrine of equivalents because the doctrine "necessarily adds uncertainty to the scope of patent claims, and thereby detracts from the public-notice function of patent claims and risks deterring non-infringing and potentially innovative endeavors." *Freedman Seating Co. v. American Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005) (citing

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 727 (2002) ("If the range of equivalents is unclear, competitors may be unable to determine what is a permitted alternative to a patented invention and what is an infringing equivalent.").

### B.     The Accused Products Do Not Literally Infringe

The indisputable facts establish that the accused Verifone products lack, at least, the claimed "interchangeably mounted" sensors and "replaceable" cradle connectors. Because literal infringement requires that each and every limitation of the claim be present in the accused device to establish infringement, a reasonable jury could not find that the Verifone products infringe any of the claims of the '453 patent.

### 1.     The Accused Products Do Not Have an Interchangeable Sensor.

As explained above, the e315 and e355 products have built-in, "integrated" sensors. *See* UMF 12. The barcode, contactless/NFC, magnetic strip, and EMV/smartcard readers in these products are not modular swappable components. *Id.* They are built-in. *Id.*

The structure of the sensors in the accused Verifone products is fundamentally different than the sensors required by each and every claim of '453 patent, that are "interchangeably mounted" so that they "can be removed or added as necessary to address different sensor requirements." '453 patent at 6:31-32. Doczy, himself, described the sensors of the accused Verifone devices as "**integrated** barcode scanners…, mag-stripe reader, and EMV and/or NFC Payment readers[.]" Marton Decl., Ex. I. As an integrated sensor is the opposite of an "interchangeably mounted" sensor, there is no question that the accused devices fail to meet this limitation required by all of the claims of the '453 patent.

2.    The Accused Verifone Products Do Not Have a "Replaceable Cradle Connector."

Similarly, the accused Verifone products do not have "replaceable" cradle connectors as required by every claim of the '453 patent. UMF 13. As discussed above, the e315 and e355 have only built-in connectors. *Id.* These built in connectors are nothing like the "replaceable" cradle connectors required by the patent that are "designed to allow various styles of [input/output] connectors to be used in the same cradle location." '453 patent, 7:54-67.

Because the accused products do not have the required "interchangeably mounted" sensor or the "replaceable" cradle connector, Verifone's accused products do not literally infringe the '453 patent.

**C.    The Accused Products Do Not Infringe under the Doctrine of Equivalents**

The accused Verifone products also do not include an equivalent to the "interchangeably mounted" sensors or "replaceable" cradle connectors required by the claims of the '453 patent.

An integrated sensor that is not "interchangeably mounted" cannot be the equivalent of one that is "interchangeably mounted." Nor can a built-in cradle connector that is not replaceable be the equivalent of a "replaceable" connector. To argue otherwise would vitiate a fundamental feature of a these two claim limitations. As such, no reasonable juror could find that the accused Verifone products include features that are equivalent to the claimed "interchangeably mounted" sensor or "replaceable cradle connector." *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420, 1429 (Fed. Cir. 1997) ("[I]n cases where the patentee's theory of equivalents would 'entirely vitiate a particular claim element, partial or complete summary judgment should be granted.'). The doctrine of equivalents "is not allowed such broad play as to effectively eliminate that element in its entirety." *Id.* at 1424.

Moreover, both the "interchangeably mounted" sensor and "replaceable" cradle connector limitations were added to the independent claims to overcome prior art during prosecution. As such, under the doctrine of prosecution history estoppel, Doczy is precluded from now claiming that fixed sensors and fixed connectors are equivalents of these limitations. Prosecution history estoppel occurs during prosecution when the applicant makes a narrowing amendment to the claim. *Voda v. Cordis Corp.*, 536 F.3d 1311, 1325 (Fed. Cir. 2008). A "patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Id.* (quoting *Festo Corp.*, 535 U.S. at 740-741). Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot rely on the doctrine of equivalents to recover claim scope. *Festo Corp.*, 535 U.S. at 734. In short, prosecution history estoppel limits the broad application of the doctrine of equivalents by barring an attempt to use an equivalents argument to recapture subject matter expressly relinquished when a patent claim is narrowed during prosecution. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Here, the original claims required only "a input for receiving information," which included both fixed and non-fixed input devices (*e.g.,* sensors). Marton Decl., Ex. B (Claims from Application Filed February 12, 2010). Therefore, when the patentee amended the claims to include the "interchangeably mounted" language to overcome prior art, the patentee waived coverage of housings with fixed sensors. Similarly, when the patentee amended the claims to further require the "replaceable" connector language to overcome prior art, the patentee surrendered any claim scope for a device that only had non-replaceable connectors. Doczy cannot now attempt to recapture the scope that was disclaimed during prosecution in order to overcome prior art rejections. Thus, summary

15

judgment of non-infringement under the doctrine of equivalents is required. *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. at 39 n.8 (1997) ("Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. … Thus, under the particular facts of a case, if prosecution history estoppel would apply or if a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court, as there would be no further material issue for the jury to resolve.").

For these reasons, Verifone's accused products cannot infringe the '453 patent under the doctrine of equivalents.

## IV.    <u>CONCLUSION</u>

No reasonable jury could find in favor of Doczy on his claims. For the foregoing reasons, Verifone respectfully requests that this Court enter summary judgment in favor of Verifone, hold that Verifone does not infringe the '453 patent as a matter of law, dismiss Doczy's Complaint in its entirety with prejudice, and award to Verifone its costs and expenses in this action and such other relief as the Court may deem just.

## V.    <u>REQUEST FOR HEARING</u>

Defendants respectfully request a hearing on this Motion not to exceed 30 minutes per side.  A hearing on this Motion is desired as the motion is case dispositive and Verifone would like to make itself available to assist the Court, should the Court have any questions.

Date: March 14, 2017                    /s/ Louis I. Mussman
                                        Louis I. Mussman, Esq.
                                        FL Bar No. 597155
                                        Email: Louis@kumussman.com
                                        Brian Ku, Esq.
                                        FL Bar No. 610461
                                        Email: brian@kumussman.com
                                        KU & MUSSMAN, P.A.
                                        18501 Pines Boulevard, Ste. 209-A
                                        Pembroke Pines, Florida 33029
                                        Tel: (305) 891-1322
                                        Fax: (305) 891-4512


                                        Ryan Marton (admitted *pro hac vice*)
                                        Email: ryan@martonribera.com
                                        MARTON RIBERA SCHUMANN & CHANG LLP
                                        548 Market Street STE 36117
                                        San Francisco, CA 94104
                                        Tel: (415) 360-2511

                                        *Attorneys for Defendants*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2017, I caused a true and correct copy of Defendants'

Amended Motion for Summary Judgment to be served on all counsel of record for the Plaintiff

via e-mail.

Date: March 14, 2017

/s/ Louis I. Mussman
Louis I. Mussman, Esq.

18